Good morning. May it please the Court, Opposing Councilman and Jason Carr represent Petitioner-Appellant Jeffrey Alexander Canally. Well, we're back to Nevada procedural rules. We're back to Rule 34-726. And in this case, what we see and what we have to grapple with is a refinement in Nevada case law over what the language of the statute means. And what I submit, the gravamen of my entire appeal here, is that when Mr. Canally filed his post-conviction petition in 97, and this 34-726 was enacted by the Nevada legislature in the 90s, maybe 94, somewhere in the mid-90s, that this was a new statute that the Nevada Supreme Court had not had an opportunity to flesh out what all its provisions meant. And if you have my opening brief, and if you look on page 14, the statute is reproduced there. And there are two clauses there that are ambiguous in my opinion, or in Mr. Canally's opinion. And what the statute says, unless there is good cause shown for delay, a petition that challenges the validity of a judgment or sentence must be filed within one year after entry of judgment of conviction, or if an appeal has been taken from the judgment within one year after the Supreme Court issues its remitter. So there's two clauses there that I submit to the Court were ambiguous in 1997. The first is, what is a petition that challenges the validity of a judgment or sentence? Clause number one. The second clause is, or if an appeal has been taken from the judgment within one year after the Supreme Court issues its remitter. Let's start with the second clause first. In my case, Mr. Canally files about 18 months after judgment is entered, he files a belated notice of appeal. Shortly thereafter, he files a post-conviction petition. The Nevada Supreme Court issues its remitter pretty within a month, six weeks after the belated notice of appeal, saying this is an untimely notice of appeal, appeal dismissed. So my client technically complied with the language of the statute. He filed his post-conviction petition within one year after the Supreme Court issued its remitter. The Supreme Court issued a remitter after his belated notice. And he filed his post-conviction petition within one year of the remitter. Kennedy. You would have us read the statute as saying within one year of filing an untimely appeal. That's the ambiguity. That is the ambiguity. Kennedy. How can that be an ambiguity in rule, in view of the rule of appeal 4b, which says an appeal requires, it should be made within 30 days of the final judgment? And the Nevada cases that say that that is jurisdictional for Nevada Supreme Court. I think the Nevada Supreme Court in this case is. You have some strong arguments. If you are bringing this case on a, this case of first impression to Nevada Supreme Court, you as a State would have strong arguments that that should be the rule. But the State, in fact, in Connelly's post-conviction litigation, admits, and I'll direct the Court to EOR 109. This is what the State filed after Connelly filed a State post-conviction petition. This is in the State district court. They filed this pleading saying this post-conviction petition should be dismissed, and in there they say, admit, there is no explicit law which defines the concept of taking an appeal. This is the State saying this. The State suggests, however, that to take an appeal means that you have to invoke the court's jurisdiction. Now, we know the State is right. We learned that in 1998. The problem with all this is that that's more than a year after the default. The rule is not established until a year after the default. Your unspoken assumption is that there is no law until a court says there is law. The legislature just doesn't make law that is binding on this issue until the court ratifies it with a decision. Isn't that what you're saying? Well, Judge, there's a spectrum here. You could make a statutory construction argument that is so ludicrous that a court of this Court would say, well, the Supreme Court didn't need to make that refinement. There could be a Supreme Court refinement of a rule that's nonintuitive, that is not directly supported by the plain language of the statute, and everyone would agree, well, that rule wasn't established until the case law established it. But how can you establish the case law if you continually say, unless you show a prior case, then it's not established? Well, anybody who files a post-conviction petition after Dickerson, the rule is established. Yes, but how did Dickerson have the temerity to establish the law if it hadn't been established before? Well, that's how law is developed. I'm not sure I understand the question. I mean, his – Dickerson's attorney said, here is what we think is an ambiguity in the law. Nevada Supreme Court, you haven't ruled on this. We need a decision. Now, the Nevada Supreme Court is just like this Court. It doesn't issue a published decision unless there's a reason for it. The overwhelming majority of their opinions are unpublished orders. Here, the Nevada Supreme Court saw that this was an issue that needed to be addressed, and issued a published opinion, saying, well, this is what the law is. But that's only one of the ambiguities. The other ambiguity, and this one is even more compelling in light of recent precedent from this Court, is that when Canale filed this post-conviction petition, he sought only one remedy, and one remedy only. What he was seeking was the right to regain his – his direct appeal from the Nevada Supreme Court. His entire post-conviction was what we call Flores-Ortega claim, which is a unique constitutional claim saying that your attorney did not consult with you over the right to take a direct appeal, and so you lost that procedural right. And I am on firm ground by saying that this is a different kind of claim, because in Johnson v. United States, this Court held that when you make a pure Flores-Ortega petition, and that's cited in my reply brief, when you make a pure Flores-Ortega petition, that you're not attacking the judgment or sentence. You're seeking only to regain a procedural right. And why was it important in that case? Because what Mr. Johnson did was he won his Flores-Ortega petition, he got his direct appeal, and then he came back to court with another 2255 years later. And this Court said, well, that's not successive, because the first one wasn't a real 2255, because all you sought to do was to regain your lost procedural right. And in Dickerson, the Nevada Supreme Court said, well, what they call Lozada claims is the same thing, that a Lozada claim 34, Chapter 34, applies to Lozada claims, even though it's not really clear that a Lozada petition is a petition that challenges the validity of a judgment or sentence, because you're not challenging the judgment. You're not challenging your sentence. All you're saying is, Court, I was unfairly deprived of the right to file an appeal. Give me back my right to appeal, because my attorney didn't tell me about the notice of appeal filing deadline. And this Court goes on to hold in 2004 that that kind of petition is a petition different in kind from a regular petition and not subject to the procedural rules. Nevada reached a different decision in 1998. I'm not challenging the Nevada decision. All I'm saying is in 1997, it was unclear. Well, let's assume for the sake of argument that Dickerson hadn't been decided even now. So could your client have taken, belated, filed a belated notice of appeal 10 years, 20 years afterwards, and then preserved the court? He's going to be born 5 because of the doctrinal latches. And that's another point the State makes here in Nevada, that they raise this kind of slippery slope argument. Well, if you buy this Court, then people are going to be able to file 18 petitions. They'll just keep reloading the time by filing notices. First of all, it's not my client. He only wanted one appeal. He only tried to do this once. Second of all, Nevada, just like the Federal system, has excessive petition rules. The Court has inherent jurisdiction to dismiss abusive petitions. They have rules. The latches rule doesn't allow you to file it more than 5 years at a time. All I'm saying is that in 1997, the law was unclear. When my client filed this post-conviction petition, it was unclear whether or not it was indeed timely because he filed it within a year of the remitter, and it was also unclear whether a peerless audit petition challenges the validity of a judgment or sentence as the plain language of 34726 says. And we don't learn until 1998 that if you are filing a Lozada-Flores-Ortega petition, that Chapter 34 does indeed apply to that. And Nevada Supreme Court felt that unclear enough that they published a published decision stating that in 1998. So we have two ambiguities here that render this procedural default rule ambiguous. And it's partly now, in general, this Court has held 34726 is an adequate rule. But we know from looking at the Supreme Court case Levy-Kemner and this case's this Court's recent decision in Powell v. Lambert that a normally adequate rule can be held inadequate when applied to specific factual scenarios. And here, under the unique procedural posture of Mr. Canale's case, given the unique nature of the claim he was making, that it wasn't clear that Chapter 34 applied to his petition and rendered it untimely, and it would not be clear for more than a year after the default occurred. And I'd like to stay the rest of my time for rebuttal, if I may. Roberts. May it please the Court. I'm Deputy Attorney General John Warwick, and I'm representing the Respondent in this matter. Once again, we're going over the well-trod ground of 34726. I would like to take a step back for a minute and talk about the overarching policy behind these procedural defenses that are being raised. It provides finality to a criminal case. One way or another. Now, in Mr. Carr's argument, he touched upon, I think the Court also touched upon, the possibility of an absurd result where you've got someone who, even though he's not able to file a timely appeal, files a belated appeal and then files a state postconviction petition. Based upon that, the State court in Dickerson talked about the possibility of someone being able to file petitions in forever, basically. Now, there would be some limits upon that, but that is a real possibility here. And in trying to defend Nevada's procedural bars, that's one thing I'd like to focus on, is the practicality of what's being presented here. Now, in looking at the burden that's put upon the State, you've got the legislature which drafts the law and it's passed, and you've got a court which some years down the road may interpret it to some extent. Well, what burden is Nevada going to be held to? Does a State court have to cover every possible permutation of the application of a State procedural bar? And that's not the case. Bargess in this Court says that a State does not have to do that. So when you've got a case where an individual files their State petition, and actually it was a notice of appeal on the same day, April 30th, 1997, the notice of appeal and the State PC petition on the same date, how can it possibly be so that it's ambiguous, excuse me, there's an ambiguity there when the law is very clear. It's one year. You've got the one year. So I don't think there was a case here of Mr. Connelly laboring under any confusion as to the time that he was allowed. He simply was late. He sat on his rights. He filed his notice of appeal and his State PC petition about 19 months after his judgment became final. The ---- Well, let's take the example on the other side. Assume hypothetically that the attorney for a defense misses it by a day and the Nevada Supreme Court doesn't get around to then finding the appeal is untimely for a couple of years because of their backlog. At that point, he's lost his right to habeas, right? Under your theory? Because there's no tolling. Well, if he's going to overcome a procedural default, he's got to show cause and prejudice. So ---- Your argument would be that he strictly would overcome that, you think? Well, he would have to prove that. He would have to be given his opportunity for that. I think that ---- But that's the practical effect of your rule, is that you're viewing this as a strict ---- well, a strict standard. If you miss it by a day or a month or a year, the same rule applies. No tolling occurs if the appeal is untimely. And if the time for filing a habeas expires in the meantime, that's just too bad. Is that ---- I mean, it's ---- that's your position. It's a very clear law and it should be strictly imposed. Otherwise, once again, you get into a situation where when will the case end? The time bar, as I understand it, doesn't bar the Petitioner from showing cause and prejudice, cause for missing the time bar. That's correct. And prejudice is the result. That's correct. And Judge Reed and his law. But as Thomas indicated on the Strickland case, if he shows that, then that he gets around the time bar, right? Correct. All right. I was just ---- I was asking about your interpretation of the time bar, not the cause and prejudice prong of it. And once again, Judge Reed did touch upon that in his order, and he found no cause, because, Mr. Canale, there was no evidence presented that this Court can look at or that the U.S. District Court in Nevada looked at showing that Mr. Canale had showed interest in the appeal or that there were viable grounds, non-frivolous grounds, for an appeal. How do you deal with the Flores-Artega argument? Well, I think that the grounds that Mr. Canale has presented in his petition here and the evidence, once again, shown to the Court that Mr. Canale had shown interest or what was presented in the court below doesn't give any rise that there was cause or that there was prejudice, if I'm answering the Court's question, if I understood it correctly. If there are no further questions, I know we've dealt with procedural default here in Nevada three cases in a row here. I would like to address one issue that was mentioned about some of the prior application of the prior NRS, Coley v. State 105, Nevada 235. It's a 1989 case regarding the application of NRS 177.3153. Once again, it's the same kind of issue about how much time did they get to file their state postconviction. That's a case that pointed to the policy of giving finality to criminal cases and denying state postconviction petitions. And that's a consistent application of the predecessor of NRS 34726. I just want to give you a little bit of a history of that. Nevada has consistently applied this, and that was the holding that we've got from Moran v. McDaniel, that as of at least 1996, and once again, Mr. Dickerson filed a state petition in 1998, the Nevada Supreme Court has consistently applied the state rule barring review of an untimely postconviction petition for writ of habeas corpus, absent cause and prejudice. And I think you'll find the same holding in Loveland v. Hatcher. And if there's nothing else, I'll just ask this Court to uphold the Nevada State procedural  Thank you. Thank you, Counsel. This case comes down to what the language of 34726 says. 34726 says a petition that challenges the validity of a judgment or sentence. It doesn't say any postconviction petition. There are words of limitation there. And what those words of limitation meant was part of the subject of Dickerson. And it's difficult for the State to say that it's a frivolous argument to say that a florist or taker claim is not ñ is a petition that doesn't challenge a judgment or sentence. And this Court held that very thing in 2004 in the 2255 context. But your vindication of the right to direct appeal is to direct appeal of a judgment or conviction, right? Right. You want to overturn that judgment or conviction. But you're ñ The right to direct appeal, if it exists, is a method or a means by which to reverse the judgment of conviction. It's a procedural ñ It's a procedural ñ It's a procedural right that you have lost.  And that's what this Court talked about in Johnson. They said, well, you want ñ because you're not ñ your petition is not saying vacate this judgment or vacate this sentence. Your petition is saying I deserve to have my direct appeal right back because I was unfairly deprived of it. And that's why in Johnson, that's why this Court held that this is not a true 2255 petition. You wouldn't be satisfied with a vindication of your right to direct appeal unless you could use it to overturn the judgment. Well, you would expect the appeal to be meaningful, yes. Well, of course. But it is a different kind of petition. And there's good policy arguments on both sides. That's why the Nevada Supreme Court came out differently than this Court did. But the point is, was it clear and well-established in 97? I submit that it wasn't. The same with the one-year rule. So on that, unless the Court has any other questions, I would submit ñ No, I think we have them. Thank you. Thank you. Well, now he'll hear argument in Rodriguez v. Castro. Good morning, Your Honors. If it may please the Court, my name is Joyce Leavitt, and I represent the Petitioner in this case.
judges: B. Fletcher, Thomas, Bea